UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VICTOR ESPADA,                          :
                                        :    Civil Action No. 13-7250 (SDW)
            Petitioner,                 :
                                        :
      v.                                :    **OPINION**
                                        :
UNITED STATES OF AMERICA,               :
                                        :
            Respondent.                 :

**WIGENTON**, District Judge:

Presently before the Court is the motion of Victor Espada ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1). Petitioner filed his motion on or about November 25, 2013. (ECF No. 1). Following this Court's order to answer, the Government filed a response (ECF No. 7). Petitioner did not file a reply. For the following reasons, this Court will deny Petitioner's motion to vacate his sentence, and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

On October 24, 2011, Petitioner, Victor Espada, was indicted and charged with knowingly and intentionally conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B) and attempting to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Document 2 attached to ECF No. 7). Following his indictment, Petitioner entered into a plea agreement with the Government under which he would plead guilty to conspiracy to possess more than 500 grams of cocaine. (Document 1 attached to ECF No. 1). In that agreement, Petitioner was directly informed that this guilty plea "carries a statutory

minimum prison sentence of 5 years, a statutory maximum prison sentence of 40 years" and appropriate fines. (*Id.* at 2). Petitioner was also informed in the agreement that his sentence would be "within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. § 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines [which] are advisory, not mandatory." (*Id.*) The agreement also stated that the sentencing judge "may impose any reasonable sentence up to and including the statutory maximum." (*Id.*). The plea agreement also included an agreed upon guidelines calculation of 27, including reductions for acceptance of responsibility and enhancements for possession of a firearm, resulting in a recommended sentence of 70 to 87 months imprisonment. (*Id.* at 8-9).

On February 28, 2012, Petitioner appeared before this Court to enter a plea of guilty. (*See* Document 7 attached to ECF No. 7). After determining that Petitioner had discussed his plea with counsel to his satisfaction and was capable of understanding proceedings with the aid of his interpreter, thus Court conducted the following colloquy with Petitioner:

> THE COURT: Alright. I have in front of me an application for permission to enter a plea of guilty.
>
> . . . .
>
> THE COURT: An application for permission to enter a plea of guilty. Did you go over this document in detail with the assistance of an interpreter with your attorney[?]
>
> [Petitioner]: Yes.
>
> THE COURT: Were all of its contents explained to you?
>
> [Petitioner]: Yes.
>
> THE COURT: Any questions you had regarding this application, were those questions answered to your satisfaction by your attorney?
>
> [Petitioner]: Yes.

THE COURT: And did you have the occasion to sign the document today here in court?

[Petitioner]: Yes.

THE COURT: Alright. And the record will reflect on page 7 he has signed. Likewise, it appears that [counsel] has affixed his signature on the Certification of Counsel page, page 8. Now, [Petitioner], is anyone promising you anything or threatening you in exchange for you entering this plea of guilty here today?

[Petitioner]: No.

THE COURT: You do understand that once you enter this plea, you cannot take it back or retract it because you do not like or agree with the sentence that I will impose?

[Petitioner]: Yes.

THE COURT: You also understand that once you enter this plea of guilty, there will be no trial in this matter where the burden would rest with the Government to prove your guilty beyond a reasonable doubt. By virtue of the fact that you're entering a plea of guilty, there will be no trial. Do you understand that?

[Petitioner]: Yes.

THE COURT: And have you had an opportunity to speak with your attorney in detail about your waiving your right to go to trial?

[Petitioner]: Yes.

THE COURT: Has he answered all of your questions to your satisfaction?

[Petitioner]: Yes.

THE COURT: And is it your intention to voluntarily waive your right to go to trial in this matter?

[Petitioner]: Yes.

THE COURT: In addition, have you had an opportunity to speak with [counsel] regarding the role of the Sentencing Guidelines?

[Petitioner]: Yes.

THE COURT: So you do understand that while I will refer to the Guidelines and use them in an advisory capacity, I'm not bound by the Sentencing Guidelines. And as I've already indicated, any sentence I impose, I impose within my discretion. You understand that?

[Petitioner]: Yes.

THE COURT: Now, I also want to address with you the plea agreement that I have in front of me. The agreement I have is dated December the 1st, 2011. With the assistance of an interpreter, did you go over this plea agreement in its entirety with your attorney?

[Petitioner]: Yes.

THE COURT: Were all of its contents explained to you?

[Petitioner]: Yes.

THE COURT: And, once again, any questions you had regarding this plea agreement, were those questions answered to your satisfaction by your attorney?

[Petitioner]: Yes.

THE COURT: And do you have the document in front of you, [Counsel]?

[Defense Counsel]: Actually, your Honor -- I do, Judge.

THE COURT: Now you do.

[Defense Counsel]: Now, I do.

THE COURT: Turn to page 7, please.

[Defense Counsel]: Yes, Judge.

THE COURT: Alright. On page 7, [Petitioner], is that your signature reflected there?

[Petitioner]: Yes.

THE COURT: And you signed this document on February the 14th, 2012; is that correct?

[Petitioner]: Yes.

THE COURT: In addition, [counsel] has also signed on February 17th, 2012, and that's reflected in the document. I want to ask you a few questions about your agreement. Specifically, on page 4, you see the top of the page there's a section entitled: Waiver of appeal and post-sentencing rights. Do you see that?

[Petitioner]: Yes.

THE COURT: Alright. That section cross references Schedule A, which is also a part of your plea agreement, specifically page 9, paragraph 9. Paragraph 9 goes into detail about the circumstances under which you are waiving your right to file an appeal or otherwise challenge the Court's sentence, if I sentence you in accordance with what's set forth in this plea agreement. Do you understand that?

[Petitioner]: Yes.

THE COURT: To be more specific, it indicates in paragraph 9 that if I sentence you at the equivalent of a Guidelines offense level of 27 or lower, you are voluntarily waiving your right to appeal or otherwise challenge the Court's sentence. Do you understand that?

[Petitioner]: Yes.

THE COURT: Likewise, the Government is also waiving its right to file an appeal or otherwise challenge the sentence if I sentence you at the equivalent of a Guidelines range of 27 or higher. Do you understand that?

[Petitioner]: Yes, I do understand.

THE COURT: Alright. So normally everyone has the right to file an appeal, but based on what's set forth in your agreement, if these conditions are met, is it your intention to voluntarily waive your right to file an appeal or otherwise challenge the Court's sentence?

[Petitioner]: Yes.

THE COURT: And you have made this decision, [Petitioner], after speaking with your attorney?

[Petitioner]: After having spoken to my family.

THE COURT: Okay. And your attorney too, I believe; correct?

[Petitioner]: Yes.

THE COURT: Okay. Alright, page 4 again. There's a section entitled: Forfeiture and abandonment. Do you see that section?

[Petitioner]: Yes.

THE COURT: Alright. On that -- in that section on page 4, in the second to last paragraph, it goes into detail about you consenting and agreeing to forfeit and abandon all rights, title and interest, whether federal, state or local law enforcement, to federal, state or local law enforcement all rights, title and interest in a .9 mm Hi-Point pistol that was recovered at the time of your arrest on May 1st, 2011. Is that your understanding as well?

[Petitioner]: Yes.

THE COURT: And, once again, you've spoken with your attorney . . . regarding your decision to forfeit and abandon that weapon?

[Petitioner]: Yes.

THE COURT: And you are making that decision voluntarily; is that correct?

[Petitioner]: Yes.

THE COURT: Alright. Now, as it is relates to a factual basis, in or about April, 2011, through on or about May 1st, 2011, did you agree with Jaime, I'm saying Jaime, it's probably Hymie, Oscar Garcia and others to purchase cocaine in New Jersey?

[Petitioner]: Yes.

THE COURT: Did you know that the purpose of the agreement was to purchase cocaine for distribution and possession with intent to distribute cocaine?

[Petitioner]: Yes.

THE COURT: Did you enter the agreement to distribute cocaine knowingly and intentionally?

[Petitioner]: Yes.

THE COURT: Did you know that cocaine is a controlled substance and it is illegal to distribute it?

[Petitioner]: Yes.

THE COURT: In furtherance of this conspiracy, during the month of April, 2011, did you have several telephone conversations with a person whom you believed was a cocaine supplier?

[Petitioner]: Yes.

THE COURT: Did you arrange to purchase two kilograms of cocaine for the negotiated purchase price of $32,000 per kilogram for a total of $64,000?

[Petitioner]: Yes.

THE COURT: Did you personally contribute approximately $32,000 toward the purchase of the cocaine while Jaime Oscar Garcia contributed the remaining $32,000?

[Petitioner]: Yes.

THE COURT: In furtherance of this conspiracy, on or about April 30th, 2011, did you and Jaime Oscar Garcia drive from Geneva, New York, to New Jersey, to purchase two kilograms of cocaine?

[Petitioner]: Yes.

THE COURT: Are you pleading guilty to Count One of the indictment because you are in fact guilty?

[Petitioner]: Yes.

THE COURT: Incident to your arrest on May 1st, 2011, did law enforcement recover a loaded Hi-Point .9 mm handgun with serial number P1360036 from your and Jaime Oscar Garcia's vehicle?

[Petitioner]: Yes.

THE COURT: Did you knowingly possess the firearm that was in the vehicle?

[Petitioner]: Yes.

THE COURT: Alright. And . . . are there any representations the Government would like to make?

[The Government]: Yes, your Honor. Thank you. The United States would prove the defendant's answers here today, at a trial, beyond a reasonable doubt by providing recorded telephone calls, witness testimony, including cooperating source's testimony and law enforcement officer testimony, as well as seized items from the May 1st, 2011, arrest, including the weapon involved in this case and also the black bag containing $64,000 in currency, your Honor. Your Honor, if I may note for the record, that that is also a part of the forfeiture and plea agreement on page 4.

THE COURT: The money?

[The Government]: The money.

THE COURT: Okay, I missed that.

[The Government]: Thank you, your Honor.

THE COURT: No problem. [Is the Government] satisfied, otherwise . . . with the factual basis?

[The Government]: I am, your Honor.

THE COURT: Alright. And just to clarify, [Petitioner], is it your intention as well, based on your plea agreement, that you are forfeiting and abandoning any rights, title or interest you have to the $64,040.00 in United States currency that was also seized on May 1st, 2011?

[Petitioner]: Yes.

THE COURT: Okay. Very well. Alright, I am likewise satisfied that with the advice of counsel and the assistance of an interpreter, that [Petitioner] is entering this plea knowingly and he's doing so voluntarily, understanding that he is waiving his right to go to trial in this matter. I'm satisfied that his responses establish a factual basis and the plea will be accepted accordingly.

(Document 7 attached to ECF No. 7 at 4-13). This Court thus accepted Petitioner's knowing and voluntary plea of guilty in this matter.

Following his guilty plea, Petitioner again appeared before this Court on June 4, 2012, for sentencing. (Document 8 attached to ECF No. 7). At sentencing, both Petitioner and the Government agreed that the recommended guideline offense level of 27 was appropriate, and that the applicable sentencing range under that offense calculation was between 70 and 87 months. (Document 8 attached to ECF No. 7 at 3-7). Based on this agreed upon offense level and a consideration of the relevant sentencing factors, this Court sentenced Petitioner to 70 months imprisonment, the bottom of the advisory guidelines range. (*Id.* at 10). Petitioner thus ultimately received a sentence of 70 months imprisonment alongside a five year term of supervised release following his imprisonment and the appropriate fines. (Document 3 attached to ECF No. 7). Petitioner does not appear to have appealed his conviction or sentence.

Following his conviction, Petitioner and the Government filed a joint motion for a reduction of sentence in April 2015 based on the 2014 amendment to the applicable sentencing guidelines which retroactively reduced the offense level for certain drug quantities. (Docket No. 11-735 at ECF No. 27). On April 29, 2015, this Court granted that motion and resentenced Petitioner to 60 months imprisonment. (Docket No. 11-735 at ECF No. 38).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that

9

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

**B. Analysis**

**1. An evidentiary hearing is not required**

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, --- F. Supp. 3d ---, ---, No. 13-2896, 2015 WL 4742380, at *3 (D.N.J. Aug. 11, 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at

546. For the reasons set forth below, Petitioner's motion to vacate sentence is patently without merit, and no evidentiary hearing is necessary in this matter.

2. **Petitioner's *Alleyne* claim**

In his motion, Petitioner presents a single claim – that his sentence violates *Alleyne v. United States*, --- U.S. ---, 133 S. Ct. 2151 (2013), because he was sentenced above the mandatory minimum for the crime to which he pled guilty based on this Court's Guidelines calculation. In *Alleyne*, the Court extended its prior holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to require that any fact which increases the mandatory minimum sentence of an offense be found by a jury beyond a reasonable doubt as any such fact is essentially an element of the offense in question. *Alleyne*, 133 S. Ct. at 2158 ("facts that increase the mandatory minimum are . . . elements and must be submitted to the jury and found beyond a reasonable doubt"). Before reaching the question of whether *Alleyne* applies to Petitioner's case, the Court must first note that Petitioner was convicted and sentenced in June of 2012. (Document 3 attached to ECF No. 7). Petitioner was thus sentenced prior to the Court's decision in *Alleyne*. As it does not appear that Petitioner filed a direct appeal of his conviction or sentence, *Alleyne* would therefore only apply to Petitioner's sentence if *Alleyne* were made retroactive to cases on collateral review. As the Third Circuit has explained, however, the "decision to make *Alleyne* retroactive [to cases on collateral review] rests exclusively with the Supreme Court which has chosen not to do so." *See United States v. Reyes*, 755 F.3d 210, 213 (3d Cir. 2014). Thus, *Alleyne* does not apply retroactively to cases on collateral review, and will not do so unless and until the Supreme Court so holds. *Id.*; *see also Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). Because *Alleyne* does not apply retroactively to cases on collateral review, and because Petitioner was

convicted and sentenced as of June 4, 2012, and did not choose to appeal, *Alleyne* does not apply to Petitioner's case. *Reyes*, 755 F.3d at 213. As such, even if Petitioner had a meritorious *Alleyne* claim, it would be of no benefit to him.

In any event, it is clear that Petitioner does not have a meritorious *Alleyne* claim. In this matter, Petitioner pled guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine, and provided a more than adequate factual basis suggesting that the conspiracy involved Petitioner seeking to purchase two kilograms of coccaine and his possession of a firearm. (Document 7 attached to ECF No. 7 at 10). Thus, Petitioner, in his plea colloquy, admitted to all of the facts which were necessary to subject him to the mandatory minimum to which he was subject in this case – five years. *See, e.g., United States v. Ramirez,* 528 F. App'x 678, 679-80 (7th Cir. 2013) (admission as to drug quantity in plea colloquy "negated the need for the district court to make a finding beyond a reasonable doubt regarding drug quantity"); *United States v. Yancy*, 725 F.3d 596, 601-602 (6th Cir. 2013) (admission of critical facts by a defendant during his plea colloquy negates any need for a jury to find those facts beyond a reasoanble doubt); *see also United States v. Booker*, 543 U.S. 220, 244 (2005) (holding, under *Apprendi* rule upon which *Alleyne* was based, that "any fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant *or* proved to a jury beyond a reasonable doubt," emphasis added). Thus, Petitioner's admissions alone subjected him to the mandatory minimum of five years, and no *Alleyne* violation resulted from Petitioner being subjected to that minimum.

Likewise, to the extent that Petitioner asserts that *Alleyne* required that he be given a mandatory minimum sentence, that assertion is categorically incorrect. *Alleyne* has never been held to require that all persons be sentenced to the mandatory minimum, instead *Alleyne* controls

only when the *range* to which a defendant is subject changes. *Alleyne*, like *Apprendi* before it, was not designed to remove any and all judicial discretion in applying a given sentence. Based on his admission of guilt, Petitioner was subject to a sentencing range between five years, the statutory minimum, and forty years, the statutory maximum. *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Thus, based on the facts admitted by Petitioner, he was subject to a sentence between five and forty years, and any sentence within that range would give rise to neither an *Alleyne* nor an *Apprendi* violation. Based on the sentencing guidelines, this Court determined that Petitioner was subject to an advisory range of 70 to 87 months. This Court, in its discretion, sentenced Petitioner to the bottom of that range, 70 months. Petitioner's sentence thus fell within the range authorized by his guilty plea and factual recitation, and no error occurred when this Court sentenced Petitioner to a term above the mandatory minimum based on its review of the advisory guidelines and the relevant sentencing factors. *See, e.g., Unitd States v. Freeman*, 763 F.3d 322, 336 (3d Cir. 2014) (no *Alleyne* error occurs when sentencing court makes factfindings necessary for determining a guidelines range that do not change the mandatory minimum or maximum sentence applicable to a defendant's conviction "so long as the ultimate sentence imposed was within the statuorilly prescribed range"). Petitioner's claim that his 70 month sentence violates *Alleyne* would therefore be without merit even if that case did apply to Petitioner's sentence.

Finally, the Court notes that, after his sentence was entered, Petitioner filed a motion pursuant to 18 U.S.C. § 3582(c) in April 2015 which resulted in his sentence being reduced from 70 months to the 60 month mandatory minimum based on retroactive changes to the sentencing guidelines. (*See* Docket No. 11-735 at ECF Nos. 37-38). As such, Petitioner's assertion that he should have received a five year sentence, were it of any merit, would now essentially be moot as Petitioner's sentence has aready been reduced to the mandatory minimum of sixty months.

Petitioner's claim must therefore be denied for that reason as well. Because Petitioner's *Alleyne* claim is without merit, this Court will deny his motion to vacate sentence.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's claims are clearly without merit in so much as *Alleyne* does not apply retroactively to cases on collateral review and no *Alleyne* error occurred in any event, jurists of reason would not disagree with this Court's denial of Petitioner's motion, and Petitioner's claims are not adequate to deserve encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability. *Id.*

## V. CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate his sentence (ECF No. 1) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: October 20, 2016

*s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge